## COUNTY OF LAMOILLE,

#### AT THE

### AUGUST TERM, 1859.

---

PRESENT:

HON. MILO L. BENNETT, ⎱
HON. JOHN PIERPOINT, ⎬ ASSISTANT JUDGES.
HON. JAMES BARRETT, ⎰

---

ROBERT HERRIN *v.* THE FRANKLIN COUNTY BANK.

*Action. Case.*

In consequence of erroneous information given by an officer of a bank to the plaintiff in regard to the amount of money which had been there deposited to his credit by a third person, the plaintiff incurred certain expenses. This erroneous information was however given in good faith; *Held,* that it was a case of *damnum absque injuria,* and that the plaintiff could not recover of the bank the amount of such expenses.

CASE. Plea, the general issue, and trial by jury, at the December Term, 1858,— ALDIS, J., presiding.

The plaintiff being indebted to the defendants upon a note for one thousand dollars, procured a discount at the Caledonia County Bank in Danville, and requested the cashier of the latter bank to send the proceeds, amounting to four hundred and eighty-four dollars and seventy-five cents, by express to St. Albans, where the defendants' banking house was located. At the same time, the plaintiff, who resided in Waterville, wrote to one Armington, his agent in St. Albans, sending him a written order on the express office in St. Albans for the money so sent, and requested him to take the money and have it applied upon the note held by the defendants. The Caledonia County Bank transmitted the money as requested by the plaintiff, but as it had not arrived at St. Albans when Armington presented the plaintiff's order at the express office, he left the order with one Barlow, the defendants' teller, and requested him to get the package of money from the express company and apply it on the plaintiff's note. The package of money from Danville arrived at St. Albans by express shortly afterwards, and the cashier of the defendants received it upon the order left by Armington, and indorsed its full amount, four hundred and eighty-four dollars and seventy-five cents, upon the plaintiff's note. By mistake, however, the entry of the money upon the defendants' books thus received was two hundred and eighty-four dollars and seventy-five cents.

A few days afterwards Armington called at the bank and inquired of the teller whether the package of money had been received from Danville, and how much it was. The teller after examining the books of the bank informed him that the amount thus received was two hundred and eighty-four dollars and seventy-five cents, whereupon Armington wrote to the plaintiff that that amount had been received and applied upon his note. It was not claimed by the plaintiff that the error in the entry upon the books, or in the information given by the teller to Armington, was intentional, nor that the defendants or their officers were guilty of any intent to defraud .or injure the plaintiff. Upon receiving this information from Armington the plaintiff immediately went to Danville to ascertain why the full amount of

the proceeds of the discount obtained there were not sent to St. Albans. At Danville he was assured by the officers of the bank that they had sent four hundred and eighty-four dollars and seventy-five cents by the stage driver to be carried by him to Montpelier, and thence to be sent by express to the plaintiff at St. Albans, whereupon the plaintiff, after returning to Waterville and consulting his attorney, started directly for Montpelier, via St. Albans, for the purpose of causing the stage driver to be arrested at the former place on the charge of stealing the money. At St. Albans, however, where the plaintiff on his way through called at the defendants' bank, the mistake was discovered upon an inspection of the plaintiff's note. .

The plaintiff claimed to recover of the defendants his expenses and the value of his time during his journey to Danville and back, and to St. Albans, as above mentioned, the same having been occasioned solely by the mistaken information given by the defendants' teller to Armington, as above stated.

The defendants requested the court to charge the jury that the plaintiff could not recover, but the court declined so to do, to which the defendants excepted.

Under the charge of the court as given the jury returned a verdict for the plaintiff.

*Hard & French*, for the defendants.

The law does not afford relief for every species of loss that parties sustain by the acts or neglects of others. Damages resulting from *fraud, deceit* or *malice*, always furnish good cause of action. So where any *public duty*, or obligation imposed by private contract is omitted or not legally fulfilled, an action lies. But where the injury is not to be traced to any evil motive, and no right has been withheld or wrong inflicted arising out of a duty implied by law from public policy, or imposed by private contract, injury (except that to life, liberty, or property, *directly*,) is not entitled to redress. The law does not seek to interfere with or enforce the moral rights and duties of society. It is only *legal injury* that sets its machinery in motion, and hence the maxim that *damnum absque injuria* gives no cause of action.

In this case the only obligation on the part of the defendants

was to receive and correctly apply upon the note all moneys paid to it for that purpose by the plaintiff. The defendants were not bound by public duty or private contract to answer inquiries or give information as to the money received, or whether it had been received at all. And not being bound to give information they are not responsible for that given, unless fraud or malice be shown; *Pasley* v. *Freeman,* 3 Term 51 ; *Haycraft* v. *Creasy,* 2 East 92 ; *Davis* v. *Jenkins,* 11 M. & W. 755 ; 2 Smith's Lead. Cases, 133 and notes; *Collins* v. *Ridgley,* 48 E. C. L. 819 ; *Rawlings* v. *Bell,* 50 E. C. L. 951.

*Thomas Glced,* for the plaintiff.

Where one party sustains an injury by the negligence or care-lessness of another, the party injured may maintain an action on the case to recover compensation for such injury. No question can be made in this case that the plaintiff has sustained damage from the negligence of the defendants ; 1 Smith's Leading Cases 311–14; *Sheldon* v. *Fairfax,* 21 Vt. 102; 2 Stephens N. P. 1006–8.

Bennett, J. The object of this action is to recover damages which the plaintiff claims to have sustained by reason of the mistaken information given to him in regard to the amount of a certain sum of money which had been deposited with the bank for his use. This is not a case of *fraud* or *bad faith* in the teller of the bank, but of pure mistake, and the question is, can this mistake be made the ground of an action against the bank, even going upon the ground that the act of the teller is to be regarded as the act of the bank ? The most that can be made of the case is, that it was the representation of a fact which turned out to be incorrect.

It may be true that the plaintiff acted on the information communicated to him by the teller, and may have been put to some trouble and expense by reason of the mistaken information which he received from the teller, but it is not *damage alone* that gives a right of action.

To make a representation which works an injury or damage, *actionable,* there must be a *fraud,* or the representation must

amount to a warranty, express or implied. The case itself negates all fraud, and it is not a case of implied warranty. Though it may be expected of banks and of men of business, that their books will show the true amounts of money received by them, from time to time, yet it would be going too far to say that the law would raise an implied warranty against all mistakes. The true sum was indorsed upon the note, and the mistake in entering the sum on the books of the bank, was probably occasioned by the teller in writing the word *two*, when he intended to write *four*.

There being no implied warranty against mistakes, no action can be maintained against the bank upon any supposed negligence. The case in principle is like the case where a person gives mistaken information in regard to the pecuniary situation of a third person, by means of which such third person obtains a credit. In such a case, though the person inquired of is told the object of the inquiry, and that there is an intention to act upon the information received, still, no action will lie for the *misinformation* if given in good faith, although it turns out incorrect and occasions a damage to the party trusting to it. *A legal injury and a damage must both concur* to give an action, and we think this is not a case where the plaintiff can be said to have sustained a *legal injury*.

The result is that the judgment is reversed and cause remanded.